IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:14-cr-344-WSD-2 |
| HUDHAYFAH ABDULLAH, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge E. Clayton Scofield's Report and Recommendation (the "R&R") [373] on Defendant Hudhayfah Abdullah's ("Defendant") Motion to Suppress Evidence Seized from Search of Residence (the "Motion") [246] and Supplement to Motion to Suppress Evidence Seized from Search of Residence (the "Supplement") [290]. In the Motion and Supplement, Defendant seeks to suppress evidence seized from his residence on September 24, 2014, during a search conducted pursuant to a federal search warrant.

### I.     BACKGROUND

Defendant, and seventeen (17) co-defendants, are charged with conspiracy to steal and cash United States Treasury ("US Treasury") checks (Count 1),

seventeen (17) counts of stealing and cashing US Treasury checks (Counts 2-19), and ten (10) counts of aggravated identity theft (Counts 20-30).[1]

On September 23, 2014, Magistrate Judge Linda T. Walker authorized an Amended Application for Search Warrant [291.1] authorizing the search of specific premises in Atlanta, Georgia (the "Premises").[2] The Amended Application was supported by the twenty-three (23) page affidavit of Perry Meador, a Federal Bureau of Investigation Special Agent (the "Affidavit"). (Meador Aff. [291.1 at 2-19]). Agent Meador executed the Affidavit under oath. The Affidavit states that the Premises is the residence of Defendant and Hussain, Fatimah, and Hassan Abdullah. (Aff. ¶ 4). The Affidavit states further that Defendant and Hussain Abdullah were the targets of a federal investigation of stolen US Treasury checks, that they directed the stolen check operation, and that they were indicted for their alleged criminal conduct. (Id.). The Affidavit states that the Premises is the location at which co-conspirators met, collected and stored US Treasury checks, divided up proceeds, shared false identification documents and hid money and firearms. (Id. ¶ 10). It is also the location to which stolen US

---

[1] Defendant is charged in only some of the US Treasury check theft and aggravated identity theft counts.

[2] The Premises address is redacted from the Search Warrant and is not further identified in this Order.


Treasury checks were delivered by runners involved in the organization.  (Id. ¶¶ 12, 15, 17.  The Affidavit explains that organizations involved in stolen US Treasury check enterprises use computers and other technology to process stolen checks and false identification documents.  (Id. ¶¶ 22-25).

The Affidavit provided information about the purchase and storage of firearms at the Premises by Defendant.  (Id. ¶¶ 19-21).  The Affidavit listed the items for which authorization to seize was requested.  (Id. at Ex. B [291.1 at 21-25]).

The Search Warrant [291.2] was executed by law enforcement personnel on September 24, 2014.  A list of the property seized during this search was prepared. ([291.2 at 7]).

On December 5, 2014, Defendant filed the Motion requesting the Court to suppress evidence seized from the Premises during the September 24, 2014, search, on the grounds that the Search Warrant did not sufficiently limit the area to be searched, that evidence was seized beyond what the Search Warrant allowed, and that issuance of the Search Warrant was not supported by sufficient probable cause including because it was based on "stale" information.  The Government

filed its response in opposition to the Motion [324].  Defendant did not file a reply.[3]

The R&R was issued on February 10, 2015.  The Magistrate Judge determined that the Motion and Supplement did not meet the pleading requirement for a cognizable motion to suppress, that there was probable cause to support issuance of the Search Warrant, and that the search conducted was proper.

## II. STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

---

[3] On December 14, 2014, Defendant filed his one-and-a-half page Supplement, asserting two broad, conclusory statements: (i) that the Amended Application and the Search Warrant should be deemed attachments to the Motion, and (ii) that "[s]uppression of the fruits of the search is proper inasmuch as none of the circumstances that trigger the good faith exception recognized in United States v. Leon, 468 U.S. 897 (1984), and its progeny, are applicable here."  (Supplement at 1-2).  The Supplement does not contain any meaningful development of facts or law.

28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted).  With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).  Neither Defendant nor the Government filed objections to the R&R and the Court reviews the findings and recommendation for plain error.[4]

## III. DISCUSSION

### A. Pleading Requirements

A motion to suppress must meet fundamental pleading requirements:

> A motion to suppress must in every critical aspect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is present.  In short, the motion must allege facts which, if proven, would provide a basis for relief.  A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing.

United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted).  The Motion and Supplement are quintessential conclusory,

---

[4] The Court reviewed the facts set forth in the R&R and finding no plain error, adopts the facts stated in the R&R.  The Court also has considered other facts in the record in conducting its plain error review.

5

indefinite pleadings that do not provide a basis for relief if proved. There is no plain error in the Magistrate Judge's recommendation that the Motion be denied for this reason alone.

### B. The Search Warrant and Probable Cause

Defendant, relying on the Search Warrant itself, the supporting Affidavit, and an inventory of property seized, argues that the Search Warrant and seizures made pursuant to it, were overly broad. He argues further that the good faith exception in United States v. Leon, 468 U.S. 897 (1984), does not apply.[5]

#### 1. *Scope of the warrant and seizure*

A reviewing court is not required to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record to support a magistrate judge's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 733 (1984). "We accord great deference to judicial determination of probable cause to issue a search warrant." United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995) (citing United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991)). Courts reviewing search warrants should not interpret supporting affidavits in a hyper-technical manner, but instead employ a realistic and commonsense approach

---

[5] Leon is the only legal authority Defendant cites in the Motion and Supplement.

6

to encourage engagement of the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations. Illinois v. Gates, 462 U.S. 213, 236-37 (1983) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)); see also United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994).  "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Upton, 466 U.S. at 734.

It is the totality of the circumstances that determines whether probable cause exists to support a search warrant, and the question is whether there is a fair probability that contraband or evidence will be found at a particular location.  See United States v. Noriega, 676 F.3d 1252, 1261 (11th Cir. 2012); Gonzalez, 940 F.2d at 1419.  "[P]robable cause deals 'with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  Gates, 462 U.S. at 241 (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)).  When issuing a warrant, a magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a

particular place." Id. at 232.  "The Fourth Amendment, by its terms, requires particularity in the warrant, not in the supporting documents." Groh v. Ramirez, 540 U.S. 551, 557 (2004).  Cross-referencing is, however, permitted, and the Eleventh Circuit has held that a warrant can be made sufficiently particular by physically attaching supporting affidavits. United States v. Weinstein, 762 F.2d 1522, 1531-32 (11th Cir. 1985).

The Court has reviewed the application for the Search Warrant and the Affidavit submitted by Agent Meador in support of the warrant application.  Agent Meador is an experienced law enforcement officer with specific training in the operation and investigation of criminal enterprises and wire tap investigations.  His experience includes how criminal operations communicate, store information and convene for meetings.  (Meador Aff. ¶ 2).  He has specific experience in investigating stolen US Treasury check schemes.  (Id. ¶ 8).  The Search Warrant, together with the Affidavit, is particular and detailed.  The Affidavit presents a description of the Premises, who resides there, including Defendant, the nature and duration of the investigation and that it involves the theft of US Treasury checks. (Id. ¶¶ 4-8).  The Affidavit describes how similar check theft schemes work, including by the use of false identification documents and detailed recordkeeping, and that the Premises was a central location for operation of the scheme.  (Id. ¶¶ 8,

10-18). The Affidavit also presents information showing the ongoing nature of the check scheme, including specific telephone intercepts, from April through August 2014, regarding current check cashing activities. (Id. ¶¶ 14-18).

The kinds of information expected to be present on the Premises and their form was detailed. What was expected to be seized, and why, was described specifically. (Id. ¶¶ 22-27). That firearms were expected to be discovered at the Premises was stated and the basis for expecting their presence explained. (Id. ¶¶ 19-21). A list of property for which authorization to seize was requested also was provided. (Id. at Ex. B).

Defendant claims that it was not reasonable to allow a search of the entire Premises because Defendant lived there with others. The argument is unfounded. The information presented to Magistrate Judge Walker in the Affidavit was that the Premises generally was used in connection with check theft operations. Meetings were conducted there and runners delivered check sale proceeds to the Premises. (Id. ¶ 12). Two of the leaders of the organization—Defendant and Hussain Abdullah—lived on the Premises. (Id. ¶ 9). False identification used to cash checks fraudulently were returned to and stored on the Premises. (Id. ¶ 13). It was reasonable not to limit the scope of the search of the Premises. Defendant's objection to the authorization of items, most notably computer evidence and

electronic media, to be seized is discredited by the delivery of the information to the Premises and information in the Affidavit regarding the maintenance and storage of information by operations like the one investigated here.  (Id. ¶¶ 8-9, 13, 18, 22-27).  Magistrate Judge Walker was presented with significant information supporting seizure of the items listed in the Affidavit, including computers and electronic media.

Considering the totality of the circumstances and the evidence presented to Magistrate Judge Walker, the Court finds there was a fair probability the evidence listed in the Search Warrant would be found at the Premises and the Search Warrant and its scope was proper.  See Noriega, 676 F.3d at 1261.  The Court finds there was probable cause to conduct the search described in the Search Warrant.

2.  *Leon and Good Faith*

Even if the Search Warrant was not sufficiently particular—which it was—the fruits of the search would be admissible under the good-faith exception.  See Leon, 468 U.S. 897.  "[T]he exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in objectively reasonable reliance on the warrant and the warrant was issued by a detached and neutral magistrate."  United States v. Maxwell, 920 F.2d 1028, 1034 (D.C. Cir. 1990).  The good-faith exception does not apply

"where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002). The question is whether the search was conducted within the scope of the items to be seized. United States v. Stefonek, 179 F.3d 1030, 1035-36 (7th Cir. 1999). In other words, where the violation of the particularity requirement "can be shown to have had no causal relation to the scope of the search or to the quantity or character of evidence seized, suppression of the evidence is not a proper sanction." Id.

Here, the items to be seized were specific and listed in the Search Warrant, and the items seized aligned with those authorized to be seized. Thus, even if the warrant was not particular enough—which it was—the good faith exception applies and the items seized are not required to be suppressed. The Court finds that the Magistrate Judge did not commit plain error in recommending that the Motion be denied.

      3.    *Hearing request*

Defendant does not present any facts or argument to support that a hearing should be required in this case, and the Court's review of the record shows a

hearing is not required and would serve no purpose.  Defendant's request for an evidentiary hearing is denied.

### III. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Magistrate Judge E. Clayton Scofield's Report and Recommendation [373] is **ADOPTED.**

**IT IS FURTHER ORDERED** that Defendant Hudhayfah Abdullah's Motion to Suppress Evidence Seized from Search of Residence [246] and Supplement to Motion to Suppress Evidence Seized from Search of Residence [290] are **DENIED.**

**SO ORDERED** this 6th day of July, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE